**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JEANNIE GARNER,**

                              **Plaintiff,**                    6:14-cv-602
                                                                            (GLS)

            v.

**CAROLYN W. COLVIN,** as
Commissioner of the Social
Security Administration,

                              **Defendant.**
_____

**APPEARANCES:**                         **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Office of Peter W. Antonowicz        PETER W. ANTONOWICZ, ESQ.
148 West Dominick Street
Rome, NY 13440

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN     JOSHUA L. KERSHNER
United States Attorney                    Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Steven P. Conte
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**District Judge**

## **MEMORANDUM-DECISION AND ORDER**

### **I. Introduction**

Plaintiff Jeannie Garner challenges the Commissioner of Social Security's denial of Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. § 405(g).[1] (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Garner's arguments, the court affirms the Commissioner's decision and dismisses the complaint.

### **II. Background**

On January 27, 2011, Garner filed an application for SSI under the Social Security Act ("the Act"), alleging disability since July 28, 2010. (Tr.[2] at 65, 136-45.) After her application was denied, (*id.* at 79-82), Garner requested a hearing before an Administrative Law Judge (ALJ), which was held on January 3, and May 8, 2013, (*id.* at 83, 316-52). On June 4, 2013, the ALJ issued an unfavorable decision denying the requested benefits which became the Commissioner's final determination upon the Social

---

[1] 42 U.S.C. § 1383(c)(3) renders section 405(g) applicable to judicial review of SSI claims.

[2] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. Nos. 10, 23.)

Security Administration Appeals Council's denial of review. (*Id.* at 1-5, 11-29.)

Garner commenced the present action by filing her complaint on May 22, 2014 wherein she sought review of the Commissioner's determination. (Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 9, 10.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 14, 27.)

### III. <u>Contentions</u>

Garner contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (Dkt. No. 14 at 11-17.) Specifically, Garner claims that the ALJ erred in failing to: (1) adequately assess her subjective complaints; and (2) properly evaluate the medical opinion evidence.[3] (*Id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and his decision is also supported

---

[3] Although Garner also makes the bare-bones assertion that the ALJ failed to develop the medical evidence, (Dkt. No. 14 at 14), she fails to point out any gaps in the record or explain what additional information the ALJ needed to determine whether Garner was disabled. Thus, it is unclear which opinion(s) or evidence Garner claims the ALJ failed to develop. Accordingly, and because a review of the record fails to uncover any obvious gaps, this contention warrants no further discussion. *See Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) ("[W]here there are no "obvious gaps" in the record, the ALJ is not required to seek additional information."); *see also* 20 C.F.R. § 416.912(d) (stating that, generally, a complete record contains a "medical history for at least the [twelve] months preceding the month in which" the claimant files her application).

3

by substantial evidence. (Dkt. No. 27 at 6-13.)

## IV. Facts

The court adopts the parties' undisputed factual recitations. (Dkt. No. 14 at 3-7; Dkt. No. 27 at 3.)

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 1383(c)(3) is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. Credibility Determination

First, Garner complains that the ALJ failed to properly assess her credibility. (Dkt. No. 14 at 11-14; Dkt. No. 26 at 1-3.) According to Garner, the ALJ failed to explain how Garner's daily activities "'replicate' capabilities necessary for obtaining and maintaining employment." (Dkt. No. 14 at 13.) Additionally, Garner claims that the ALJ failed to address

4

the limitations she suffers in performing these activities, as described in her hearing testimony. (*Id.*; Dkt. No. 26 at 1-3.) Lastly, Garner argues that her testimony is supported by the opinion of her treating physicians and the consultative examiner. (Dkt. No. 14 at 14.) The court disagrees.

Once the ALJ determines that the claimant suffers from a "medically determinable impairment[] that could reasonably be expected to produce the [symptoms] alleged," he "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal quotation marks and citations omitted). In performing this analysis, the ALJ "must consider the entire case record and give specific reasons for the weight given to the [claimant's] statements." SSR 96-7p, 61 Fed. Reg. 34,483, 34,485 (July 2, 1996). Specifically, in addition to the objective medical evidence, the ALJ must consider the following factors: "1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness, and side effects of any medications taken; 5) other treatment received; and 6)

other measures taken to relieve symptoms." *F.S. v. Astrue*, No. 1:10-CV-444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R. § 416.929(c)(3)(i)-(vi)).

Here, the ALJ concluded that Garner's testimony concerning the intensity, persistence, and limiting effects of her symptoms was "not credible." (Tr. at 21.) Specifically, the ALJ considered Garner's daily activities, sporadic work history, treatment records, and the consistency of her own statements. (*Id.* at 21-22); *see* 20 C.F.R. § 416.929(c)(3)(i), (v), (vii). With respect to her daily activities, Garner informed consultative examiner Kalyani Ganesh that, although prolonged standing was painful, she showered, dressed, bathed, cleaned her home, and cared for her children. (Tr. at 252.) She further acknowledged that she cooked meals a couple of times a week, did laundry twice a week, and shopped once a week. (*Id.*) On a Social Security Administration Function Report, Garner reported that she was able to pay bills and regularly attended medical appointments for herself and her children. (*Id.* at 171-72.) The ALJ noted Garner's complaints of difficulty with some housework due to her back problems. (*Id.* at 19, 21.) However, the ALJ concluded that, "notwithstanding some impairments," Garner has engaged "in a reasonably

normal level of daily activities," which require physical and mental capabilities as well as social interactions that "replicate those necessary for obtaining and maintaining employment." (*Id.* at 21.)

Garner complains that the ALJ failed to address her testimony that she was very restricted in her ability to perform these daily activities or explain how such limited activities "replicate" the capabilities necessary for obtaining and maintaining employment. (Dkt. No. 14 at 13-14.) However, information about a claimant's daily activities recorded by medical sources and reported in the medical evidence "can be extremely valuable in the adjudicator's evaluation of an individual's statements about pain or other symptoms." SSR 96-7p, 61 Fed. Reg. at 34,486. Here, the ALJ properly considered the reports of Garner's daily activities throughout the record, and, in fact, noted that she complained of difficulty with housework due to her back pain. (Tr. at 19, 21.) While Garner's daily activities alone do not create an independent basis for finding her not credible, taken as a whole, the ALJ's credibility determination is not "patently unreasonable." *Pietrunti v. Director, Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) ("Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable."

7

(internal quotation marks and citation omitted)). In particular, as noted by the ALJ, Garner worked sporadically prior to filing her application for benefits, demonstrating only limited attachment to the workforce. (Tr. at 21, 178, 328-32); *see Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998) (explaining that work history is "one of many factors that the ALJ is instructed to consider in weighing the credibility of claimant testimony"). Moreover, Garner's testimony regarding the severity of her symptoms and her functional limitations is inconsistent with her own statements to medical providers as well as the medical signs and findings contained in her treatment records. *See* SSR 96-7p, 61 Fed. Reg. at 34,486 ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.").

For instance, at the May 2013 hearing, Garner testified that she is capable of sitting with her hands elevated for use for only five minutes, cannot stand without leaning against something, and cannot walk one city block. (Tr. at 336, 340-41.) However, in December 2012 and March and April 2013, she reported to treating physician Ivan Antonevich that she could sit comfortably for thirty minutes, stand for fifteen minutes, walk for twenty feet without having to stop, and did not have difficulty caring for

8

herself, but could not pick up objects from the floor comfortably. (*Id.* at 292, 303, 311.) Further, throughout the record, on examination, Garner's gait was normal and she used no assistive devices. (*Id.* at 231, 252, 293, 313.) In December 2011, Garner reported to treating physician Vivienne Taylor that she was exercising in an effort to loose weight. (*Id.* at 270.) Garner also testified that pain medications did not relieve her pain. (*Id.* at 339.) However, Garner's treatment records indicate that, in January 2011, she reported that she had not taken any medication in two weeks because "she did not have a lot of pain." (*Id.* at 211.) Thereafter, Dr. Taylor refused to prescribe Garner narcotics because her drug screen was negative for her medication. (*Id.* at 277.) Moreover, Garner informed Dr. Antonevich that hydrocodone provided great relief of her pain. (*Id.* at 292, 303, 311.)

In addition to Garner's poor work history and inconsistent statements, the ALJ properly considered the lack of objective medical evidence supporting Garner's allegations of debilitating symptoms. (*Id.* at 22); *see* SSR 96-7p, 61 Fed. Reg. at 34,487 (explaining that the absence of objective medical evidence supporting a claimant's statements about the intensity and persistence of pain or other symptoms is one factor that the ALJ must consider, in the context of all the evidence, when assessing a

9

claimant's credibility). Here, Dr. Taylor's treatment records reveal few, if any, objective findings. (Tr. at 211, 213-14, 216, 228, 266, 270, 274, 277.) Although Dr. Antonevich's treatment notes indicate mild to severe tenderness on Garner's back, a positive Patrick's test, and painful facet loading, (*id.* at 293, 313), her gait was normal, she walked unassisted, her skin temperature was normal, straight leg raising was negative, and Garner's neurological examination was within normal limits. (*Id.*) In addition, Garner's consultative examination revealed that she needed no help changing for the exam or getting on and off of the exam table, and was able to rise from a chair without difficulty. (*Id.* at 252.) Although there was tenderness in Garner's lumbar spine and her range of motion was reduced, straight leg raising was negative, deep tendon reflexes were physiologic and equal, and she had 5/5 strength in her upper and lower extremities. (*Id.* at 253.) Moreover, MRI results from December 2012 and February 2011 revealed no significant new abnormalities from Garner's June 2008 MRI, taken two years prior to Garner's alleged onset date. (*Id.* at 209-10, 290-91.) These MRIs revealed only small to moderate central disc herniation at the L5-S1 levels, and mild disc bulging and mild facet degenerative change. (*Id.*)

Based on the foregoing, the court is satisfied that the ALJ's credibility finding is based on the appropriate legal standards and supported by substantial evidence.[4]

## B. <u>Evaluating Medical Opinion Evidence</u>

Next, Garner argues that the ALJ erred in weighing the opinion of her treating physician. (Dkt. No. 14 at 14-17.) Specifically, Garner contends that because Dr. Antonevich's opinion was supported by objective findings, and the opinion of Dr. Ganesh was not, Dr. Antonevich's opinion should have been given controlling weight, or, at least, greater weight than that of Dr. Ganesh. (*Id.*) Further, Garner claims that the ALJ erred in according greater weight to the "nonspecific" opinions of consultative examiners than the "very specific opinions expressed by treating specialist sources." (*Id.* at 16.) The Commissioner counters, and the court agrees, that the ALJ properly evaluated the medical opinion evidence in determining Garner's residual functional capacity (RFC).[5] (Dkt. No. 27 at 10-13.)

---

[4] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

[5] A claimant's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 416.945(a)(3).

11

Medical opinions, regardless of the source, are evaluated by considering several factors outlined in 20 C.F.R. § 416.927(c). Controlling weight will be given to a treating physician's opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Id.* § 416.927(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). Unless controlling weight is given to a treating source's opinion, the ALJ is required to consider the following factors in determining the weight assigned to a medical opinion: whether or not the source examined the claimant; the existence, length and nature of a treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner. *See* 20 C.F.R. § 416.927(c).

Here, the ALJ determined that, due to lumbar spine degenerative disc disease, depression, and anxiety, Garner was limited to performing the full range of light work.[6] (Tr. at 20.) The ALJ further concluded that

---

[6] Light work requires lifting no more than twenty pounds at a time with frequent lifting or carrying of up to ten pounds. *See* 20 C.F.R. § 416.967(b). Further, "the full range of light work requires standing or walking, off and on, for a total of approximately [six] hours of an [eight]-hour workday." SSR 83-10, 1983 WL 31251, at *6 (1983).

Garner could perform unskilled work[7] that requires interaction with others for simple tasks, but should avoid work requiring more complex interaction with others or joint effort to achieve work goals. (*Id.* at 20, 25.) In making this determination, the ALJ relied on the medical opinions of consultative examiners Ganesh and Dennis Noia. (*Id.* at 24.)

Garner objects to the ALJ's failure to give controlling weight to the opinion of Dr. Antonevich. (Dkt. No. 14 at 14-17.) In April 2013, Dr. Antonevich opined that, due to low back pain that radiates to her right lower extremity, Garner was restricted to lifting and carrying ten pounds occasionally, and five pounds frequently. (Tr. at 300-01.) According to Dr. Antonevich, in an eight-hour day, Garner could sit for two hours and stand and/or walk for two hours, and would need to lay down intermittently. (*Id.* at 300.) Dr. Antonevich also reported that Garner suffered mild limitations in her ability to reach and handle. (*Id.*)

The ALJ declined to give Dr. Antonevich's opinion controlling weight, because it was not well-supported by clinical findings and laboratory

---

[7] "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15, 1985 WL 56857, at *4 (1985).

13

diagnostic techniques, and inconsistent with the opinion and findings of Dr. Ganesh. (*Id.* at 24.) This determination is legally sound and supported by substantial evidence. Specifically, as discussed above, *see supra* Part VI.A, a review of Garner's treatment records reveals few clinical findings, and MRIs taken in February 2011 and December 2012 were consistent with the minimal findings on her June 2008 MRI. (Tr. at 209-10, 211, 213-14, 216, 228, 266, 270, 274, 277, 290-91, 293, 313.) Further, in Dr. Ganesh's opinion, Garner was not limited in her ability to sit, stand or walk, and only mildly limited in her ability to lift, carry, push, and pull. (*Id.* at 254.) Notably, the mere use of phrases such as "moderate" or "mild" does not render a doctor's opinion vague or non-substantial for purposes of an ALJ's RFC determination. *See Mancuso v. Colvin*, No. 12-cv-6425, 2013 WL 3324006, at *4 (W.D.N.Y. July 1, 2013). Here, Dr. Ganesh's opinion is well supported by her extensive examination and not in any way conclusory. *See Kinder v. Colvin*, No. 13-CV-06368, 2014 WL 4184820, at *7 (W.D.N.Y. Aug. 21, 2014).

With respect to her mental limitations, Dr. Noia opined that, although she appeared to be having some difficulty dealing with stress, Garner was capable of understanding and following simple instructions and directions,

14

performing simple and some complex tasks with supervision and independently, maintaining attention and concentration for tasks, regularly attending to a routine and maintaining a schedule, making appropriate decisions, and relating to and interacting moderately well with others. (Tr. at 232.) The ALJ gave this opinion greater weight than that of Mark McDowell, a mental health counselor who opined that Garner had moderate limitations in her ability to understand and remember instructions, interact appropriately with others, maintain socially appropriate behavior, and function in a work setting at a consistent pace. (*Id.* at 298-99.) As the ALJ noted, (*id.* at 24), McDowell is not an acceptable medical source whose opinion is deserving of controlling weight under the regulations, and, further, he had only just begun treating Garner at the time he rendered his opinion. *See* 20 C.F.R. § 416.913(a), (d)(1)*; cf.* SSR 06-03p, 71 Fed. Reg. 45,593, 45,596 (Aug. 9, 2006) ("[I]t may be appropriate to give more weight to the opinion of a medical source who is not an 'acceptable medical source' if he or she has seen the individual more often.").

In sum, considering Garner's examination results, as well as the opinions of Drs. Ganesh and Noia, the ALJ did not err in weighing the

15

opinions of Garner's treating sources. *See Halloran v. Barnhart*, 362 F.3d at 32 ("[T]he opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts."); *Baszto v. Astrue*, 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010) ("[A]n ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability.").

C. **Remaining Findings and Conclusions**

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Garner's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

September 18, 2015
Albany, New York

Gary L. Sharpe
U.S. District Judge